IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.   No. 06-20356-B

JOHNNY HUMPHREY,

    Defendant.
_____

### ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS
_____

    Before the Court is the motion to suppress of the Defendant, Johnny Humphrey. Humphrey was indicted in a one-count indictment, charging him with being a felon in possession of a firearm. It is alleged that, on January 4, 2006, Humphrey possessed a Smith & Wesson, Model SW9P, 9 mm caliber pistol, in violation of 18 U.S.C. § 922(g). The Defendant's motion seeks to suppress the weapon on the grounds it was seized in violation of the Fourth Amendment. The Government claims that the gun was found by the police while conducting an extended frisk of the Defendant for the purposes of police protection. For the following reasons, the Defendant's motion is GRANTED.

    At the hearing on the Defendant's motion, the Government presented Robert Brown, a Memphis Police Department ("MPD") officer who, on January 4, 2006, responded to a domestic violence call at 2147 Kenosha in Memphis, Tennessee. Accompanying him was Officer Wesley Littlejohn. Upon arrival at the scene, Brown found the complainant, Tonya Hester, in the front yard. She claimed she had argued with Humphrey and he had choked her. She wanted to retrieve personal items from the house and, thus, the three entered the dwelling through a side door which lead into a kitchen/den area. According to Brown, Defendant Humphrey was sitting on a couch in the den. Brown recalled that the Defendant was fidgeting and making movements with his hands that made the officers uncomfortable "because he was moving around on the couch as if he was either stuffing something or attempting to hide something." The officers wanted to check him for weapons. They advanced directly to where the Defendant was sitting in order to inquire about his side of the story.

When the officers approached, Humphrey rose to his feet and attempted to walk off. He was stopped and patted down by Littlejohn and stayed where he was temporarily detained. While Littlejohn searched the Defendant, Brown lifted a cushion of the couch where Humphrey had been sitting and discovered a gun. Brown claimed that the officers did not search anywhere else.

On cross-examination, the officer related that he did not remember whether the call he received was a 911 call. Hester did not mention any use of weapons when she told them about the altercation between her and the Defendant. He also recalled her saying she did not know if there were any guns in the house. Hester was the individual who opened the door when they entered the residence. Brown believed the den was to the left when he walked into the house where the Defendant was seated and also believed that the couch was facing the officer. He could not remember if other couches were in the room or whether the television was on. The officer did not recall seeing any marks on Hester and did not arrest the Defendant, but referred the victim to the MPD domestic assault group. Brown claimed he was unable to see the gun before he lifted the cushion. When it was discovered, the officer checked the status of the firearm, which was stolen, and issued Humphrey a misdemeanor citation. It was noted on examination of the officer that the citation did not contain any statement about unusual movements by the Defendant and referred to the officers' actions as a "protective sweep of the couch." The officer did not recall that handcuffs were placed on the Defendant at the time.

The next witness tendered on behalf of the Government was Officer Littlejohn. He testified that, when he arrived at the scene and determined it was a domestic violence call, he was somewhat cautious and nervous due to the fact that he had lost a friend, apparently another police officer, who was killed while responding to such a call. Littlejohn claimed that he looks at people's hands during an investigation to determine if they are "fidgety." He recalled that Hester said she did not know if there were any guns inside the house, and that he usually patted persons down on such occasions. Littlejohn also saw the Defendant fidgeting around or "fumbling with something" for a few seconds and patted him down after he got off the couch. At that point he observed Officer Brown "frisking"

2

the couch and discovering a gun. Littlejohn also denied the use of handcuffs. He stated that the complainant reported nothing about Defendant using a gun or any other weapons. Littlejohn did not remember what the Defendant was wearing at the time, although he mentioned Humphrey may have been wearing a shirt, but had no recollection as to whether his hands were in his pockets. This officer stated that the couch was to the right and against the wall as he walked in. When Humphrey was temporarily detained, Littlejohn noted that the Defendant was in his control. Handcuffs were placed on the Defendant after Brown found the gun. Littlejohn did not see where the television was located and did not recall where Hester went after the gun was located. He also admitted there was nothing mentioned in the citation with regard to the Defendant acting fidgety. Because the officer did not see any signs of abuse on Hester, the Defendant was not arrested.

The final witness was Tonya Hester, who was called by the defense. She stated that she was at the time of the hearing the girlfriend of the Defendant and that they were living together on Kenosha on the date of the incident in question. She recalled that the two argued and that he grabbed her and took her cell phone and keys. She called a non-emergency number after arriving at work and requested that someone be dispatched to assist her in obtaining some clothes, her phone and keys from the house. When she arrived at the residence, Hester stated she waited approximately twenty to thirty minutes for officers to appear. She related to them what had happened but never mentioned anything about any weapons. She then opened the door, went inside the den and recalled that the Defendant at that point was coming from the kitchen to the den. The officers asked for Humphrey's name and placed him in handcuffs until they could determine what was going on. Hester denied that Humphrey was sitting down when they entered the house. She recalled that one officer looked around and then went directly to the couch, lifted the cushion and saw a gun on the floor. She believed Humphrey was patted down but recalled he was wearing only shorts and possibly a tank top. Hester averred that the Defendant was then placed in a police car but was only issued a citation for the incident. She related that the couch was to the left as they came into the den and that the television was on.

3

On cross-examination, the witness admitted she was angry with the Defendant and was still arguing with him when she came back to the house with the officers. She also stated that he grabbed her neck during the fight. The witness knew a gun was in the house and that it belonged to her brother, but was unaware of its location, although she claimed to have seen the gun a few weeks before when she was cleaning the couch. Hester admitted she did not want the Defendant to be arrested and in fact posted his bond upon his arrest for the current charges. She denied, however, that she would do anything illegal to help him. The Court did not find credible Hester's testimony concerning Humphrey's location when the officers entered the house and their search of the couch.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, . . . but upon probable cause . . . ." U.S. Const. amend. IV. "While an arrest must be supported by probable cause, the police officers are also permitted to make a reasonable investigatory stop, even in the absence of probable cause, as set forth by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)." United States v. Long, 464 F.3d 569, 572 (6th Cir. 2006), cert. denied, ___ U.S. ___, 127 S. Ct. 1339, 167 L. Ed. 2d 135 (2007). "Under Terry, an officer is permitted to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." United States v. Perez, 440 F.3d 363, 370 (6th Cir.), cert. denied sub nom. Rhodes v. United States, ___ U.S. ___, 127 S. Ct. 542, 166 L. Ed. 2d 401 (2006) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)) (internal quotation marks omitted). "Courts must determine from the totality of the circumstances whether law enforcement had an objective and particularized basis for suspecting criminal wrongdoing." Id. at 371. Terry further permits an officer to conduct a "patdown" of an individual "upon reasonable suspicion that [he] is armed and dangerous." Knowles v. Iowa, 525 U.S. 113, 117-18, 119 S. Ct. 484, 488, 142 L. Ed. 2d 492 (1998) (citing Terry, 392 U.S. at 27, 88 S. Ct. 1868). The Supreme Court articulated in Terry that

> [o]ur evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable

> search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry, 392 U.S. at 27, 88 S. Ct. at 1883 (internal citations and footnotes omitted), see also Michigan v. Summers, 452 U.S. 692, 698, 101 S. Ct. 2587, 2592, 69 L. Ed. 2d 340 (1981) (during a Terry stop, an officer may conduct a patdown search or frisk for weapons if he has a reasonable suspicion to believe he was dealing with a possibly armed and dangerous suspect); United States v. Vite-Espinoza, 342 F.3d 462, 466 (6th Cir. 2003), reh'g and suggestion for reh'g en banc denied (Nov. 21, 2003) (same).

The Supreme Court has also indicated that the search may extend to the area surrounding the individual during a Terry investigation "if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049-50 & n.14, 16, 103 S. Ct. 3469, 3481 & n.14, 16, 77 L. Ed. 2d 1201 (1983) (internal quotation marks omitted), see also Knowles, 525 U.S. at 117-18, 119 S. Ct. at 488 (officers may "conduct a 'Terry patdown' of the passenger compartment of a vehicle upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon," citing Michigan v. Long).

The Government argues that this case is controlled by Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), in which the Supreme Court explained that

> [w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. . . . And the area into which an arrestee might reach in order to grab a weapon . . . must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person

> and the area within his immediate control--construing that phrase to mean the area from within which he might gain possession of a weapon . . .

Chimel, 395 U.S. at 762-63, 89 S. Ct. at 2040 (internal quotation marks omitted).  Clearly, the "immediate control test" developed by the Supreme Court in Chimel permitted a search of the area within the suspect's immediate control *when an arrest was made.*  See United States v. Romero, 452 F.3d 610, 619 (6th Cir. 2006), cert. denied, ___ U.S. ___, 127 S. Ct. 1320, 167 L. Ed. 2d 130 (2007) ("So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest").  The Government submits that the immediate control test should also apply to Terry situations where *no* arrest in fact occurred.  What the Government appears to be espousing in its briefs is the notion that police officers should automatically be permitted to conduct a patdown search of the area surrounding an individual any time a Terry stop is conducted.  In support of its position, the Government cites Williams v. State, 19 Md. App. 204, 310 A. 2d 593 (Md. App. 1973), for the proposition that

> [i]t follows ineluctably from [the] common purpose [between a search incident to arrest and a Terry frisk of protecting an officer by neutralizing all potentially available weapons] that the range in space of preventive police activity is coextensive in the search incident situations and in the frisk situations.  To serve the purpose giving birth to the exception in the first place, it is as necessary to the frisk as to the search incident to define the perimeter of permitted police activity as that area within the lunge, the grasp, the reach of the suspect -- that area which may fairly be deemed to be an extension of his person.  Whether the police are arresting a suspect or are temporarily detaining him for questioning, the potential ability of the suspect to grab for a weapon is a constant factor.  Although the search incident may be more extensive than the frisk, the two will be, perforce, equally extensive.

Williams, 19 Md. App. at 213-14, 310 A. 2d at 599 (internal citations and quotation marks omitted).

Williams involved a vehicle stop arising from a bulletin issued to officers advising of a shooting and describing an automobile that matched the defendant's. Id. at 209-10, 310 A. 2d at 597.  The officer conducted a Terry stop.  A brown paper bag was observed by the officer under the right rear seat between the defendant's feet, which was seized and searched immediately after the defendant was ordered out of the car. Id. at 209, 310 A. 2d at 596-97.  The bag contained not a gun, but marijuana. Id. at 209-210, 310 A. 2d at 596-97.  The court, recognizing that Terry permitted the patdown of an "individual whose suspicious behavior [the officer] is investigating at close range"

6

when he was "justified in believing" that person "is armed and presently dangerous to the officer or to others," found that a "frisk" did not violate the Fourth Amendment as the officer believed when he stopped the vehicle that the occupants had been involved in a shooting. Id. at 211-12, 310 A. 2d at 597-98. The court approved the search of the bag as well, on the theory that it could have concealed a weapon which could have been used against the officer. In doing so, the court equated the "reach" of a suspect in a Terry situation who the officer believed to be armed and dangerous to that of an arrestee who might obtain a weapon within his immediate control. Id at 212-14, 310 A. 2d at 598-99. The Williams court did not hold that the search of the bag was automatically permissible as incident to the Terry stop but, rather, recognized, as did the Supreme Court in Michigan v. Long, that a search of the area surrounding a suspect during such a detention may not offend the constitution so long as the officer believed the defendant was armed and dangerous. See Michigan v. Long, 463 U.S. at 1049-50 & n.14, 16, 103 S. Ct. at 3481 & n.14, 16.

Even assuming that the extended "patdown" of the couch was a proper Terry frisk, the Court finds that, in this case, it was without basis, as there is no evidence that the officers believed Humphrey was armed and dangerous. Neither officer testified that Hester advised them her boyfriend had a gun or had ever used or threatened to use a gun in any domestic altercation between the two. She did not know if there was a firearm in the house. While domestic violence situations are without question potentially volatile and dangerous, the requirements of Terry nonetheless apply.

United States v. Pardue, 270 F. Supp. 2d 61 (D. Me. 2003), aff'd, 385 F.3d 101 (1st Cir. 2004), cert. denied, 543 U.S. 1169, 125 S. Ct. 1353, 161 L. Ed. 2d 146 (2005) is instructive in this regard. In Pardue, officers received a report of a domestic disturbance in which the suspect had thrown a lighter at his sister. Pardue, 270 F. Supp. 2d at 64. The report included a description of the perpetrator, who had left the scene. Id. at 63-64. An officer spotted a man who fit the description and performed a Terry stop. After the defendant indicated he had argued with his sister, the officer removed his backpack from his shoulder, placed it on the trunk of his police cruiser, patted him down and placed him in the back of the vehicle with the door open. Id. at 64. The

7

backpack was then searched.  Id.  The court determined that, based on the domestic violence report, the officer had reasonable suspicion to detain Pardue.  He did not, however, have justification to search the backpack.  Specifically, the court found that, even though he had recently been violent toward his sister by throwing the lighter, there was no evidence to suggest he appeared dangerous to the officer.  Nor was there testimony by the officer at the suppression hearing that he believed Pardue was armed.  Instead, he simply averred, as Littlejohn did here, that the search of the backpack was part of his "routine practice."  Id. at 66.  The court held that the officer "did not have the objectively reasonable belief that the [d]efendant was armed and dangerous that is necessary to lawfully pat down, let alone open and search, [d]efendant's backpack."  Id.

Moreover, the fact that Humphrey was "fidgety" fails to provide an objectively reasonable basis for a search of the couch.  "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."  United States v. Caruthers, 458 F.3d 459, 466 (6th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 752, 166 L. Ed. 2d 582 (2006) (quoting Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)).  "Nervousness is, however, an unreliable indicator, as many citizens become nervous, even when they have nothing to hide or fear."  United States v. Henry, 429 F.3d 603, 613 (6th Cir. 2005) (citation and internal quotation marks omitted).  In Caruthers, the Sixth Circuit cautioned that "[a]lthough the police may validly consider an individual's furtiveness in deciding whether to conduct a Terry stop, courts must take care that the factor not be invoked cavalierly."  Caruthers, 458 F.3d at 466.  The court quoted Judge Posner, who reflected in United States v. Broomfield, 417 F.3d 654 (7th Cir. 2005) that

> the officer testified that he was additionally suspicious because when he drove by Broomfield in his squad car before turning around and getting out and accosting him he noticed that Broomfield was staring straight ahead.  Had Broomfield instead glanced around him, the officer would doubtless have testified that Broomfield seemed nervous or, the preferred term because of its vagueness, "furtive."  Whether you stand still or more, drive above, below, or at the speed limit, you will be described by the police as acting suspiciously should they wish to stop or arrest you.  Such subjective, promiscuous appeals to an ineffable intuition should not be credited.

Id. at 466-67 (quoting Broomfield, 417 F.3d at 655).

In this case, the credibility of the officers in characterizing Humphrey as "fidgety" or, as

Brown stated, "attempting to hide something" is suspect considering there was no mention of it in the citation, which Brown himself prepared.  The citation was reviewed by Littlejohn, who also apparently did not think Humphrey's furtive movements significant enough to mention.[1]  Even if the Court were to credit their testimony, the officers' vague description of Humphrey's movements offer little in the way of establishing an objectively reasonable belief that the couch concealed a firearm.  Indeed, neither officer testified that he believed that the Defendant was armed and dangerous, or that the couch contained a weapon.  Having two police officers walk into one's den unannounced is obviously disconcerting and would, it seems to the Court, tend to cause one to make some sort of startled movement.  In addition, the Court understands that police officers often encounter situations which make them uncomfortable.  However, Terry and its progeny simply do not permit officers to search every person with whom they come into contact and the area surrounding them as a matter of course.  See Michigan v. Long, 463 U.S. at 1049-50 & n.14, 16, 103 S. Ct. at 3481 & n.14, 16, supra.  Based on the evidence presented, the Court finds that the "patdown" of the couch violated the Fourth Amendment.  The motion to suppress is GRANTED.

IT IS SO ORDERED this 4th day of May, 2007.

                                      s/ J. DANIEL BREEN
                                      UNITED STATES DISTRICT JUDGE

---

[1] As outlined above, Brown did note in the citation that the gun was found during a "protective sweep" of the couch.  "[O]fficers making an arrest in a home may, as a precautionary measure, search spaces immediately adjoining the place of arrest for persons who might pose an immediate danger to them.  Officers may conduct a more pervasive search when they have articulable facts, which taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.  The sweep may extend only to those places a person may be found . . ."  Wilson v. Morgan, 477 F.3d 326, 338 (6th Cir. 2007) (citing Maryland v. Buie, 494 U.S. 325, 334, 336, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990)) (internal citations and quotation marks omitted).  At the hearing, counsel for the Government conceded that Buie did not in fact authorize the search of the couch, as it was not a place a person might be found.